## Case No. 15,730.

### UNITED STATES v. MARTIN.

[13 Int. Rev. Rec. 19.]

Circuit Court, D. Tennessee.[1]  1870.

INTERNAL REVENUE—TOBACCO PRESS—TESTIMONY OF GOVERNMENT OFFICER.

[One may be convicted of keeping a tobacco press without a legal bond on the sole testimony of a government officer that defendant told him that he had used an extra press in his factory, which he had just removed.]

[This was an indictment of J. W. Martin for keeping a tobacco press without the bond required by law.]

EMMONS, Circuit Judge (charging jury). The case of the government depends solely upon the testimony of Mr. Gavett, a government officer, who swears the defendant told him he had used in his factory another press besides the one then standing, and that he had just removed it to his other factory. If you believe this witness, and that the facts stated to him by the defendant are true—that he worked two presses, if it were only for a day or an hour—then you should find him guilty. This, within the statute, is keeping two presses for use. He has done the act which the law forbids, kept a press "for use" without giving the statutory bond. I do not

see how Gavett can be mistaken. It seems to me you must credit his testimony or convict him of perjury. It is true another government officer says two weeks before he was at the manufactory, and also at other times, and saw but one press. There is nothing in this evidence necessarily in conflict with the full admission of the defendant that he had used the second press. The employés of the defendant would know this fact positively, and could, if produced, readily contradict the admission, if made in misapprehension or error. There is before you no question of intent. If you believe the defendant did keep for use two presses you will find him guilty.

Although it may seem unusual, there are many precedents in justification of the liberty taken, when I express the hope that this is the last case where the government will ask a jury to convict a citizen of a crime upon the admissions of a defendant, sworn to by its own officer, in reference to facts which, if true, may be so readily proven by others. There are undoubtedly cases where, unless certain classes of laws go unadministered altogether, the testimony of officials as to facts within their observation must necessarily be used. From the secrecy of the crimes none but official detectives, save in rare instances, will ever discover the evidences of guilt. But these are exceptional, and when they occur so plainly involve their own justification as to prevent all hostile criticism. There is, too, a most manifest difference—one which will arrest the attention of all, whether familiar with judicial proceedings or not—between proving the occurrence of facts (which, if untrue, might be met by a counter proof) and a reliance upon the admissions of a defendant, in reference to such facts made to the officer while dealing with him in behalf of the government. In the case before us the resort to such evidence, it would seem, is wholly unnecessary. If the defendant used more than one press, as the government witness swears he confessed, it is a fact susceptible of proof by every employé in his factory and about his establishment. Perjury need not be feared about facts so readily established. And still we are left with the single oath of a government officer swearing to the admission, and the oath of his fellow officer swearing that although he had visited the factory twice a month for months before he never saw more than a single press set up for use. True, they are not in conflict. The latter has but little tendency to contradict the other. But why shall a great and wealthy government, whose agents should set a good example in the administration of the law, without necessity, abandon the legitimate and only politic mode of proof and resort to these admissions, against the effect of which all our elementary books without exception, and numerous judgments of learned judges from the earliest days warn the courts. It is difficult for those not conversant with the details of our legal history, and especially with that of criminal trials, to understand the hearty and universal repugnance of our people to this species of proof. To those who are so its explanation is easy. It springs from the struggle of the English race for liberty. Whenever you find an Englishman, or a descendant of an Englishman, who has read his forefathers' history, he will, without reasoning—without any discussion of the propriety of its particular employment—denounce all resort by the government to confessions of a defendant, when proved by its officers, to send him to prison. The community, in its hostility to this dangerous agency, overlooks the guilt of the offender, and esteems the departure from right rules of government as a greater crime than that it is sought to punish. The question forces itself to the surface: Why resort to it? Why uselessly, if not in fact, at least in the estimation of the community, degrade the agents of the law, until gentlemen of character, men of reliability and high repute, those who are unwilling to be traduced and vilified, can hardly be tempted to hold such places? You, gentlemen, did not, perhaps, notice the remark of this seemingly intelligent and gentlemanly young man, whose testimony calls for these remarks. When asked what were his duties he said his office was designated by the odious name of "detective." I trust his sensibility will not injure his credibility before you. And having said what I have, I may be pardoned if I add that had I perceived anything calculated to shake confidence in his statement I would have foreborne it wholly. I have the most unquestioning confidence in the truth of every word he uttered. But this, so far from excusing in this instance the testimony itself, adds to its pernicious influence as a precedent, and I the more earnestly protest against it.

And having gone thus far, I am forced, lest I do injustice, to enter a protest against it being interpreted as a rebuke in any the slightest degree, of our able, industrious, and over-worked district attorney. Had he three heads and six hands, and each as competent as the efficient ones he has, it would be impossible for him to prepare in detail the hundreds of cases in his care. And, gentlemen, they extend to several hundreds. He is forced, willingly or unwillingly, to do as in this case—accept the accidents of the official reports or not try the causes at all. He should have, during the vacation, such efficient assistants as would enable him to arrange and complete the testimony in every case. Without this it is impossible for him to meet successfully the labored preparation in books and proofs which the ability and better paid zeal and more ample time of the defendants' counsel almost always present. I find no fault with him. The error lies elsewhere. That commendable governmental economy which all of us so much desire is practised mainly in those departments distant from the public purse-strings, and whose

wants the public press and the politicians seldom discuss.

May I hope, gentlemen, that this somewhat severe denunciation of a resort to this mode of proof will not influence your estimate of its credibility in the case before you. The witness is not impeached; he swears to what is not inherently improbable, and if the press was not used, as the defendant admitted, the proof of this fact was easily made by the defendant. If you believe the testimony you cannot reject it, because you, as I do, consider its introduction grossly impolitic. You have no more right to disregard it for this reason when it is once before you, than I as a judge to exclude it entirely from your consideration for a like reason. I am sworn to decide impartially the legal questions on its admissibility, and against a prejudice as strong as any of you can possibly entertain I have suffered it, as is my undoubted duty, to be given. You are equally bound to find the defendant guilty if you believe that he told Mr. Gavett what he swears to, and that he told the truth when he said it irrespective of your opinion as to the impolicy of using such proof by the government. It is no light matter to disregard or trifle with a juror's oath. We do not half often enough consider what this much abused and too frequently used form really means. We say without much emphasis or seriousness, "In the presence of Almighty God." We seldom reflect upon it, as it is an invocation of His special presence—as a solemn declaration that we realize in a peculiar sense and with reverential feelings that we are before our Maker. "I do solemnly swear" is a promise in that presence which has been so directly invoked that you will echo the testimony as you believe it to be in your verdict. The clerk adds, "So help you God." It is nothing less than a prayer, in which all unite that you may be aided by God to keep the solemn promise you have made. Its rapid utterance and frequent repetition may oftentimes lessen its solemnity and immediate influence. But he who has taken it and assumed the duty of a juror, one of the most important which a citizen can perform, is wholly unworthy to fill the places you occupy if he does not, to the utmost of his ability, trample upon his prejudices, and accepting, as he swears he will do, the law from the court, deliver his verdict according to the testimony.